## · CHARLESTON.

### LLOYD v. MILLS.

Submitted September 7, 1909.    Decided November 22, 1910.

1. TENANCY IN COMMON—*Adverse Possession—Sale of Co-Tenant's Interest.*

   If one co-tenant make an executory contract for sale to a stranger of the entire tract, not merely his interest, and the purchaser·entered into actual possession, this is an ouster of the other co-tenant, and such possession for the period of the statute of limitations will bar his rights, without other notice of adverse claim.

2. ADVERSE POSSESSION—*Color of Title.*

   A quitclaim deed for land is good color of title on which to base adversary possession under the statute of limitations.

3. SAME—*What Constitutes—Possession by Lessee.*

   Actual possession in drilling and producing oil and gas by a lessee of land under the usual lease for production of oil and gas, is actual possession of the land by the lessor for adversary possession.

(MILLER, JUDGE, absent.)

Appeal from Circuit Court, Wetzel County.

Bill by Joshua R. Lloyd and others against John Mills, Jr., and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

*H. W. Russell* and *H. P. Camden,* for appellants.

*S. Bruce Hall* and *Thos. P. Jacobs,* for appellee John Mills, Jr. *Weil & Thorp, Charles B. Prichard,* and *Van Winkle & Ambler,* for appellees Sarah Lloyd Prichard and Emma D. Lloyd. ·

BRANNON, JUDGE:

Stacy Lloyd died owning land in Wetzel county leaving three heirs, Ephraim L. Lloyd, John S. Lloyd and Stacy Lloyd, Jr. Two of these heirs, John S. Lloyd and Ephraim L. Lloyd, 24th November, 1869, made an executory contract selling and agreeing to convey by quitclaim deed to John ·Mills, Jared Maris, William H. Buell and Thomas W. Ewert the said land. The.

purchasers were strangers to the title. It seems that Ewert was to take a deed under this contract in his name to hold in trust for himself and co-purchasers, and under the contract John S. Lloyd and Ephraim L. Lloyd executed to Ewert a quitclaim deed conveying the land, dated 14th February, 1870. The said contract and the said deed did not sell and convey merely the undivided interests or shares of the Lloyd grantors, but the whole land in its entirety, thus ignoring the right of Stacy Lloyd, Jr., one of the said three heirs. It is sufficient to say without detail of conveyances, that all title which vested in Ewert or his co-purchasers by said executory contract and deed came to be owned and claimed by John Mills, Jr. That is not denied. The said deed was sent by its makers to Ewert with the request for payment of the purchase money, but Ewert having discovered that the heirs of Stacy Lloyd, Jr., claimed an interest and of some other adverse claims, declined payment until titles should be settled with some adverse claimant, and wrote to John and Ephraim Lloyd that the deed was in "Ewert & (Name not distinguishable) safe subject to yourselves." Thus this deed lay in the safe of Ewert some years. He did not return it to the grantors. They did not reclaim it. Ewert claimed the land all the while. John Mills, Jr., acquired possession of this deed, he being a claimant of the land under it, and put it on record, May 13, 1889. He claimed under it. Had a tenant on it. He had surveys of the land made, took timber off it, guarded it from squatters, paid taxes on it and otherwise claimed under that deed. The land was on the tax books in his name from 1894. It had been charged from 1889 in Ewert's name under the 1870 deed, showing claim under that deed. Thus there can be no question of his claim under that deed. In January, 1876, Maris wrote a letter to Mrs. Hitchcock, a claimant as a child of Stacy Lloyd, Jr., in answer to inquiry by her as to the land, that "The heirs at law of Stacy Lloyd, Jr., have for anything I know, a legal interest in those lands to the amount of one third of all that may be held as determined by those suits." Ewert and others had instituted a suit against Kyle, an adverse claimant for part of the land in the name of John S. Lloyd and Ephraim L. Lloyd and the heirs of Stacy Lloyd, Jr., as plaintiffs, and Mrs. Hitchcock wrote asking why the names of Stacy Lloyd's heirs had been used as plaintiffs,

and Maris wrote her that he had appeared as the next friend of the infant heirs of Stacy Lloyd, Jr., in order to save that interest from going to others by reason of the statute of limitations, and that it was necessary to sue in the names of John S. and Ephraim L. Lloyd. He stated that they had learned that the heirs of Stacy Lloyd, Jr., claimed an interest, and said the suit had been brought in the name of the Lloyds as the legal title was in John S. and Ephraim L. Lloyd because the title was in them and the heirs of Stacy Lloyd, Jr. He said that the suit was for the benefit of the heirs of Stacy Lloyd, Jr., as much as for themselves. Maris at some time offered the heirs of Stacy Lloyd, Jr., three hundred dollars for their interest, which was refused. In the suit against Kyle begun in 1870 there was a decree of recovery in 1883 in favor of the Lloyds, among them the heirs of Stacy Lloyd, Jr., and a writ of possession was awarded them. John Mills, Jr., 24th October, 1895, having such title as above described, leased a tract of 659 acres to the Philadelphia Company for the production of oil and gas. This lease was recorded February 17, 1896. John Mills, Jr., made another lease of 776 acres to the same company, October 29, 1895, for oil and gas, which was recorded February 5, 1896. The leases are for five years and as long thereafter as oil and gas should be produced in paying quantity, giving the lessee right to go on the land, drill in quest of oil and gas, and convey them over the surface, using water for drilling and engines, putting machinery and any structures on the surface necessary for the object of the lease. These are the lands involved in this case. These leases were not for the undivided interests in the tracts, but of the entire tracts. The Philadelphia Company took possession of the lands under the said leases in January, 1896, and drilled three wells producing gas and oil more than ten years before the institution of this suit, and operated them. Altogether the company has drilled twenty-two wells under its leases, five gas, fifteen oil and two dry wells. Under these leases John Mills, Jr., has received the oil and gas royalty. On the 3rd day of November, 1906, this suit was instituted against John Mills, Jr., and others by Joshua Lloyd and others, claiming as heirs under Stacy Lloyd, Jr., setting up their claim to one third of the land, not asking partition in kind, but demanding that John Mills, Jr., be held to

account to them for one third of the money received by him from oil and gas royalty, and for timber sold from the land. Emma D. Lloyd, the widow of Stacy Lloyd, 3rd, a son of Stacy Lloyd, Jr., and Sarah Lloyd Prichard, his only heir, were made defendants in the suit and filed a cross-bill answer uniting in the demands made by the plaintiffs, and asking that John Mills, Jr., be held to such account and for a decree for their interests in such moneys. The decree of the court dismissed the plaintiffs' bill without any relief to the plaintiffs, but decreed to Sarah Lloyd Prichard her proper share and required Mills to account to her therefor, holding that the plaintilffs were barred of relief by the statute of limitations, but that the rights of Sarah Lloyd Prichard were saved because of her infancy.

No one questions that the heirs of Stacy Lloyd, Jr., once had a one third interest in the land involved in this suit. Has that interest been lost by the statute of limitations? Two of the heirs of Stacy Lloyd, Sr., assuming to have owned the whole of the land, claiming, it seems, that their brother, Stacy Lloyd, Jr., had received his share by advancement in their father's estate, did make an executory contract selling to Mills, Maris, Buell and Ewert the tracts of land, not mere interests therein, but the whole tracts. I am of the opinion for myself that in ordinary cases an executory contract is color of title under the statute of limitations. In *Pickens* v. *Stout,* 67 W. Va. 422 (68 S. E. 354), in an opinion filed by me, I discussed this subject, and cited authorities, and shall not renew the discussion here. I will only cite that excellent new work, American & English Encyclopedia of Law and Practice, Vol. 2, 461, saying that as against persons other than the vendor, "between whom and the vendee there is no privity, the possession of the vendee is deemed to be adverse; and it is well settled that the possession of a person who enters under an executory contract to purchase, and subsequently obtains his deed, in pursuance of the contract, is adverse from the time of his entry as to all the world except the vendor." I mean to say that that executory contract is color of title, and if followed by possession confers title under the statute. But in the *Pickens Case* it is held that though an executory contract may not be color of title as between adverse claimants, yet where one co-tenant makes an executory contract

to a stranger for the whole tract, and it is followed by possession, that is an ouster of the other tenant and confers title under the statute. It is held that it is only necessary in such a case that there be an ouster by actual possession, and that this may be as well under an executory contract as under a deed passing legal title. That is the holding in that case. Therefore, if John Mills, Jr., deriving all the right conferred upon the purchasers under that contract, can show possession he thereby ousts the co-tenant and gets the land by time, because that contract was a sale by two of the heirs of Stacy Lloyd, Sr., to strangers, and when followed by possession, is a complete ouster of the co-tenant, and confers title by the statute. *Talbott* v. *Woodford,* 48 W. Va., 449; *Bennett* v. *Pierce,* 50 *Id.* 604. So, *Pickens* v. *Stout,* just cited, is full authority for the proposition that that executory contract, with possession under it, works an ouster and constitutes adverse possession under the statute conferring title on John Mills, Jr. This renders it unimportant to refer to the deed made under that contract. But there is the quitclaim deed made under that contract by two of the heirs out of three to Ewert. Clearly that is color of title on which to base ouster and adversary possession. I was somewhat surprised at the statement in brief of counsel that a quitclaim deed, simply because quitclaim, is not good color of title. For this we are cited to 1 Cyc. 1079. The cases there cited do not sustain the text. The Iowa cases were not quitclaim deeds of an *entire* tract purporting to convey the total title, but only the right, title and interest of the co-tenant making them. The New York case was where one co-tenant in possession had a quitclaim deed from another. The former brought ejectment against the latter, and it was held that ejectment would not lie, as there was no ouster of the plaintiff by silent possession of the defendant. He did not deny his fellow's right. The efficiency of a quitclaim was not the question. That was between original co-tenants, not the case of a stranger claiming under a quitclaim deed from one co-tenant for the whole interest. John Mills, Jr., never was a co-tenant. He was a stranger, as were those from whom he derived title, claiming all. *Johnston* v. *Va. Coal Co.,* 96 Va. 158. 2 Enc. L. & P. 509, lays down, with very many authorities from many sources, that "As a general rule, a quitclaim deed is sufficient to confer

color of title." *Waterman* v. *Hall,* 77 N. E. 142 (4 L. R. A. (N. S.) 776), tells us that "A quitclaim deed which purports to convey the property is as good color of title as a warranty deed." But it is said that that deed was not accepted by Ewert and therefore cannot be used for color of title. It was sent by its grantors to the grantee and remained for years in his hands unreturned and not reclaimed by the grantors. It seems quite technical to make that point. It will at once close this objection to say that the bill alleges, and so does the answer of Emma Lloyd and Sarah Lloyd Prichard allege, the "execution" of this deed. That means delivery and acceptance. No evidence can be considered to contradict this allegation of the pleadings. However, if we concede that the deed was not accepted by Ewert, I hold that that fact is immaterial. The fact remains that John Mills, Jr., claiming under Ewert and the executory contract, received that deed and claims under it. It is color of title no matter that it was not accepted by Ewert. Any paper writing purporting to give title, good or bad, right or wrong, is color of title under the statute. Why tell us that his possession of that deed is wrongful? That does not deprive it of its operation. There it is with claim under it. I think that as John Mills, Jr., owned the land derivatively from that executory contract, derivatively from Ewert and co-purchasers, he had a right to accept that deed, though its grantee had not done so. He did accept it, and no matter whether it was right or not, it goes for color of title under the statute.

Thus we have color of title. The next question is, Is there possession under it such as to give title under the statute? Now, John Mills, Jr., cannot show such acts of possession prior to the oil leases as to confer title. So Judge Willis thought, so we find. We need not detail evidence here. But we hold, that those oil leases followed by actual possession under them, is such possession under that executory contract and under that deed, each and both, as to constitute an ouster and give Mills title by the statute of limitations. It is urged upon us that those leases were not conveyances of the corpus of the land, its whole body, but only conferred upon the lessee a right to explore for oil and left the possession, the constructive possession and the land itself in Mills. What difference? We need hardly cite authority to show that when a man claiming

land has a tenant in actual possession the possession of the tenant is the possession of his landlord under the statute of limitatations. The *Pickens-Stout Case* so holds. By the possession of those lessees Mills was in possession of the whole land, surface, minerals and all. What he can do himself he can do by another. If John Mills, Jr., had gone on that land and raised corn and wheat or drilled oil wells, you would not deny that his possession would count. Why can he not do that through a lessee? If the drilling for oil by John Mills, Jr., would be such possession, why not the same act by his tenant work the same result in law? These leases of the entire tract left the oil and gas in place in Mills; but gave the lessee company the right to go into actual physical possession of the surface anywhere on the tracts and to use it for all purposes necessary for the production of oil and gas, occupy the surface and penetrate the bowels of the earth. Why does not such a tenancy operate as effectually as the possession of Mills as in any ordinary case of lease for farming purposes? Where the difference? Is not the owner of land in possession when he has a permanent tenant mining coal for royalty? Is not the possession of the tenant open, notorious and visible? Is it not as much so as if the landlord were living on the land? If a man have oil lessees on his land in actual operation having bought the land from A., would not the possession of the lessees be notice to a second purchaser of the land of the rights of the first purchaser? In short, such occupancy by oil lessees is as real, actual, open and notorious as if the owner were on the land himself or had a tenant raising grain thereon. The oil lessee is taking from the land its products, as well in the one case as in the other. A stranger has patent possession, and the other party must take notice.

The chief reliance of the plaintiffs is, that Maris, Ewert and other claimants under sale from the two Lloyd heirs once recognized the right of the heirs of Stacy Lloyd, Jr., by the letter mentioned above, and the suit in their names. That was before John Mills, Jr., had interest. He never made such admission. But in every case of ouster by one co-tenant his fellow was once recognized as a co-tenant. Even Maris, Ewert and others would not be precluded from ousting those heirs afterwards, and much less John Mills, Jr. After these admissions

he took deeds from others owning derivatively from said executory contract and quitclaim deed to Ewert, had the land entered in his name for taxes, cut timber and had a tenant on the land, leased the entire tracts, received rents and profits without accounting to Stacy Lloyd's heirs, and in many ways claimed the land as his own.

A great deal of law is cited us to the effect, that where one co-tenant is in possession, mere silent posession, it will not affect other co-tenants, without notice of adverse claim. That is so where there is one co-tenant in possession; his possession is that of all, until he bring home to his fellow notice of adverse claim. But that is not the case where one conveys the tract as sole owner to a stranger and the grantee goes into possession. Other notice is not necessary.

As we hold there was no adverse possession until the leases for gas and oil, and as Sarah Lloyd Prichard did not become of age until June, 1903, and had five years thereafter in which to sue, her right is not barred, and we cannot sustain the cross-assignment of error made by Mills against that part of the decree which requires him to account for her interest.

Decree affirmed.

*Affirmed.*