HARRISON SHOBE *et al., etc.*

*v.*

IRA S. LATIMER, JR., *Director,*

*Dept. of Natural Resources and Dorcas Public Service District*

(No. 14112)

Decided March 20, 1979.

*James M. Cagle* for appellants.

*Chauncey H. Browning*, Attorney General, *Richard L. Earles*, Assistant Attorney General, for appellee, Ira S. Latimer, Jr.

*Thomas L. Linkous* for appellee Dorcas Public Service Dist.

McGRAW, JUSTICE:

This case, on appeal from a final judgment of the Circuit Court of Kanawha County, involves a declaratory judgment action instituted pursuant to the provisions of West Virginia's Uniform Declaratory Judgments Act, W.Va. Code § 55-13-1, *et seq.* [1941] and R.C.P. 57, against a state officer and a local public service district to obtain a declaration of rights as to a stream of water located in Grant County, West Virginia.

The plaintiffs below brought a class action[1] seeking a declaratory judgment that a water contract between the West Virginia Department of Natural Resources and the Dorcas Public Service District was illegal, void and unconstitutional. The plaintiffs also sought a preliminary and permanent injunction prohibiting the defendants and all those acting in concert with them from enforcing and carrying out the terms of the contract subject to dispute.

The trial court, in granting the defendants' motion to dismiss, ruled that the plaintiffs did not have standing under the Declaratory Judgments Act to seek a declaratory judgment as to the validity of the water contract.

The trial court dismissed the claim for injunctive relief on the theory that the Circuit Court of Kanawha County did not have venue to enjoin the act of diverting water from a stream, Spring Run, physically located in another judicial circuit, Grant County, West Virginia. We reverse these rulings. The questions raised are standing, and venue.

---

[1] The trial court did not rule on the class action aspects of the case.

The nature of the pleadings in this proceeding is significant and it is appropriate to set forth much of the complaint, excluding its formal parts. Its material parts are as follows:

1. Plaintiff Harrison Shobe is a resident property owner in Grant County, West Virginia, who resides both in Petersburg, West Virginia and Dorcas, West Virginia. He is a member of the West Virginia Council of Trout Unlimited.

2. Plaintiff Ernest Nester is a resident of Alloy, Fayette County, West Virginia. He is presently serving as Chairman of the West Virginia Council of Trout Unlimited.

3. Plaintiff Ernest Nester brings this action individually and as a class action pursuant to Rule 23(a)(1) of the West Virginia Rules of Civil Procedure. The class he represents consists of all those members of the West Virginia Council of Trout Unlimited who engage in sport fishing on Spring Run, a unique and beautiful trout stream located in Grant County, West Virginia, and who are concerned with the protection and preservation of Spring Run as a healthy cold water environment.

5. The West Virginia Council of Trout Unlimited is an unincorporated association possessing its own by-laws and having approximately 200 members throughout the State of West Virginia. The Council's governing body consists of a chairman, vice-chairman, and secretary-treasurer. The Council is comprised of five local chapters which are located in different communities throughout West Virginia. It is an organization affiliated with Trout Unlimited, a public non-profit corporation whose national headquarters is in Denver, Colorado. Trout Unlimited's principle goal is the protection and enhancement of the cold-water environment. In furtherance of this goal, the members of the West Virginia Council of Trout Unlimited engage in numerous projects and programs in the State of West Virginia.

6. Defendant, Ira S. Latimer, Jr., is presently serving as the Director of the West Virginia Department of Natural Resources. His business offices are located in the Capitol Building Complex in Charleston, Kanawha County, West Virginia. In his capacity, the defendant is responsible for all contracts entered into by the Department of Natural Resources.

7. Defendant, Dorcas Public Service District, is a public corporation and political sub-division of the State of West Virginia organized and operating in Grant County, West Virginia, pursuant to the powers invested in it by the laws of West Virginia as embodied in the W. Va. Code, Chap. 16, Art. 13A, Sec. 1, et seq.

13. Each of the above-described parcels of property is located on Spring Run in Grant County, West Virginia. The property belonging to plaintiff Harrison Shobe is located approximately ½ mile below and downstream from the property owned by the Department of Natural Resources. Spring Run is a natural spring stream rising in the property owned by the State of West Virginia, Department of Natural Resources, and flowing naturally for a distance of approximately one and one-quarter miles through the property of plaintiff Harrison Shobe.

15. By virtue of the said contract, the defendants are diverting water from its natural course. During the period since the contract was executed the number of users in the Dorcas Public Service District has vastly increased and this increase has resulted in a concomitant diminution of the quantity of water which flows through the property of plaintiff Harrison Shobe. As a result of this diversion and reduction of flow, the plaintiffs, Harrison Shobe, Ernest Nester and the class he represents, are unable to enjoy the water in its natural uses and they believe that if no action is taken to halt this diversion, Spring Run will be eliminated as a cold water environment.

16. During the period in which the contract has been in effect, the water level of Spring Run has been reduced by approximately 30%. Because of this extensive reduction in depth, plaintiff Harrison Shobe is no longer able to use the water from the stream as a water supply for his fruit orchards. Further, because of this extensive reduction in depth, the trout which breed in Spring Run are being physically injured in that they are being scraped and scarred by the rocks on the stream's bottom. Further, because of the extensive reduction in depth, the plaintiffs are no longer able to fully enjoy Spring Run as a beautiful and plentiful trout stream and they assert that because of the defendants' actions Spring Run is close to elimination as an outstanding trout stream.

18. The plaintiffs allege that the contract entered into by the defendants and attached hereto as Exhibit C is void and illegal in that the defendant Ira S. Latimer, Jr., does not possess the legal authority to enter into the agreement to grant, bargain, sell, convey, or to lease the property and the water thereon for the purposes of supplying such water to users in a public service district.[2]

19. Plaintiff Harrison Shobe alleges that the actions of the defendants constitute the taking of his property without due process of law and as such is in contravention of the constitution of the State of West Virginia and of the United States in that he was not given any prior notice of the defendants' actions or an opportunity for a hearing to contest such actions nor has he received any compensation for the taking of his property.

20. The plaintiffs further allege that the defendants' contract and their consequent actions in diverting water which naturally flows through

---

[2] While no party has raised or argued the point at this stage of the proceeding, we do note that W.Va. Code § 20-1-15 qualifies the authority of the Director of the Department of Natural Resources to convey real property interests under W.Va. Code § 20-1-7.

the property of plaintiff Harrison Shobe is illegal in that it contravenes the common law of the State of West Virginia and the West Virginia Constitution, Article 8, Section 21 [sic]. Plaintiffs further allege that this diversion of water constitutes a nuisance and a continuing trespass upon the lands of plaintiff Harrison Shobe.

There is no dispute that the water being extracted by the Dorcas Public Service District has taken place by reason of the contract, counsel for plaintiffs and defendants, public service district having so stipulated.

## STANDING TO SUE

Standing to sue in this case is predicated on the following allegations in the pleadings: (1) Shobe's real property interests as a riparian owner and his interests as a user of the spring have been and are being invaded by the execution of a void and illegal contract; and (2) Nester, an actual user of Spring Run for sport fishing and a chairman of an organization dedicated to the goal of preserving for future generations healthy cold-water environments such as Spring Run, has, by virtue of the diminution of the quantity of water which flows through the property of plaintiff Shobe, suffered substantial direct injury to his interests in being able to enjoy the water in its natural state, and is imminently threatened with the complete loss of the stream for sport fishing.

The trial court ruled that because plaintiffs were not actual parties to that agreement they lacked standing to challenge the validity and operation of the water contract between the two defendant governmental entities. We find this reasoning and ruling erroneous.

It is a primary requirement of the Declaratory Judgments Act that plaintiffs demonstrate they have standing to obtain the relief requested. To that end W.Va. Code § 55-13-2 [1941] provides:

> "*Any person* interested under a deed, will, written contract, or other writings constituting a contract, or *whose rights, status or other legal relations are affected by a statute,* municipal ordi-

nance, *contract* or franchise, *may have determined any question of construction or validity arising under the* instrument, statute, ordinance, *contract* or franchise *and obtain a declaration of rights, status or other legal relations thereunder."* (emphasis added).

The statute by its terms contains no requirement that the party seeking to attack the validity of a contract be one of the contracting parties. Even if the beginning phrase of this section, "any person interested under . . . a written contract" envisions only persons who are parties to the contract, the emphasized portions of the statute clearly contemplate litigation by a third-party to a contract whose "rights, status or other legal relations" are affected by the existence and operation of such agreement. The precise extent to which language of the Act permits persons not a party to a contract to obtain declaratory relief is the more appropriate inquiry.

As a general rule, third-parties to a contract between two private citizens cannot sue to obtain a declaration as to the validity of such a contract or to raise questions as to its construction. The reason is that persons not a party to a contract generally have no substantial interest directly affected by the contract. They have no interest in guaranteeing that private citizens have not entered or do not enter into void contracts, or in forcing contracting parties to live up to their promises. *See, e.g., Main Parking Mall v. Salt Lake City Corporation,* 531 P.2d 866 (Utah 1975).[3] This general rule was well expressed in *Wells v. Bank of Nevada,* 522 P.2d 1014 (Nev. 1974):

> Controversies arising under an agreement properly are to be determined and settled by parties to the agreement or their assigns, that is, by those who have legal rights or duties thereunder. Absent evidence of a third party beneficiary status, an assignment of contract rights or delegation of contract duties, neither . . . [of the nonpar-

---

[3] *See,* J. Sax, *Standing To Sue: A Critical Review of the Mineral King Decision,* 13 Natural Resources J. 76 (1973).

ty plaintiffs] has rights, duties or obligations under the agreement.

The contract involved in this proceeding, however is not a contract between private persons having little or no direct impact on the plaintiffs' or the public interest. It is, in essence, a contract between two governmental entities for the diversion of a resource necessary for human life, having substantial aesthetic and recreational value, and which is currently serving as a high quality trout habitat.

Plaintiffs herein are not unrelated, intermeddling third-parties seeking to enforce a private contract having no impact on their interests. Plaintiff Shobe, as a riparian owner, has alleged a private property interest directly in jeopardy which may entitle him to some relief.[4] He is a user of the spring for domestic and agricultural purposes, as well as for sport fishing. Additionally, he is a member of an organization dedicated to preserving streams for future generations. Plaintiff Nester, as a user of the stream for recreational purposes and as chairman of an organization dedicated to the preservation of healthy, cold-water environments necessary for the habitat of trout, has a direct and substantial interest in the subject matter of this litigation.

The plaintiffs in error have a direct and substantial interest in an actual, justiciable controversy. *See, e.g., Mainella v. Board of Trustees*, 126 W. Va. 183, 27 S.E.2d 486 (1943). There can be no question as to Shobe's standing to seek a declaration of rights on his private property or riparian interests claim. Nester's "status" as a user of the stream is unquestionably affected by the existence and operation of the public contract. By virtue of holding office in a nonprofit organization devoted exclusively to the preservation of trout streams, and by virtue of his status as present user of the stream, he has

---

[4] For an analysis of substantive water law in West Virginia, see the following:

M. Lugar, *Water Law in West Virginia*, 66 W. Va. L. Rev. 191 (1963-64); Note, 80 W. Va. L. Rev. 356 (1977-78).

a sufficient personal stake in the outcome of this controversy to assure that the case will be properly presented before the Court, *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and there is a logical nexus between the status plaintiffs in error assert and the contract claim sought to be adjudicated. *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). But for the contract the diversion would not be taking place. Thus, the considerations underlying the general rule are not present here, and are not controlling in this case.

The Declaratory Judgments Act, W.Va. Code § 55-13-12, provides that "[t]his article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." We are of the opinion that it would be contrary to the express purpose and spirit of the Act to deny standing to plaintiff Nester in the context of the particular facts of this case.

The requirement of a personal legal interest or right has been abandoned by the federal courts reviewing administrative or governmental conduct under the Administrative Procedures Act, *see, e.g., Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); C. Wright *Handbook of the Law of Federal Courts* § 13 (3rd ed. 1976). In *Data Processing* 90 S.Ct. at 830 the Court stated:

> The "legal interest" test goes to the merits. The question of standing is different. It concerns, apart from the "case" or "controversy" test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. Thus the Administrative Procedure Act grants standing to a person 'aggrieved by agency action within the meaning of a relevant statute.' 5 U.S.C. § 702 (1964 ed., Supp. IV). That interest, at times, may reflect "aesthetic, conservational and recreational" as well as economic values.

*Scenic Hudson Preservation Conference v. FPC*, 2 Cir., 354 F.2d 608, 616; *Office of Communication of United Church of Christ*, 123 U.S. App. D.C. 328, 334-340, 359 F.2d 994, 1000-1006. A person or a family may have a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause and the Free Exercise Clause. *Abington School District v. Schempp*, 374 U.S. 203, 83 S. Ct. 1560, 10 L. Ed.2d 844. We mention these noneconomic values to emphasize that standing may stem from them as well as from the economic injury on which petitioners rely here. Certainly he who is "likely to be financially" injured, *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, at 477, 60 S. Ct. 693, at 698, (84 L.Ed. 869) may be a reliable private attorney general to litigate the issues of the public interest in the present case.

Professor Wright, in commenting on and analyzing this case, states at 48, *supra:*

[The court] announced a two-part test for standing. Standing exists if "the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise," and if "the interest sought to be protected by the complainant is arguably within the zone of interest to be protected or regulated by the statute or constitutional guarantee in question. [footnotes omitted].

Therefore, no personal legal rights requirement should be engrafted on our remedial statute and we reject that notion.

The significant and important environmental concerns underlying this action should not be lost sight of in the highly theoretical law of standing. Conflicting claims and interests as to precious natural resources are proper matters of judicial consideration, notwithstanding the difficulties and complexities so often involved. Non-economic injury has been held sufficient to grant standing. The United States Supreme Court stated in *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S. Ct. 1361, 1366, 31 L. Ed.2d 636, 643 (1970), and reiterated in *United States v.*

*Students Chal. Reg. Agcy. Pro. (Scrap)*, 412 U.S. 669, 93 S. Ct. 2405, 37 L. Ed.2d 254 (1973):

> Aesthetic and environmental well-being like economic well-being, are important ingredients of the quality of life in our society, and the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process. . . .

The Legislature of this State has expressly recognized the importance of the interests advanced by

> [d]eclaring [it] to be the public policy of the State of West Virginia that the wildlife resources of this State shall be protected for the use and enjoyment of all the citizens of the State. All species of wildlife shall be maintained for value which may be either intrinsic or ecological or of benefit to man. Such benefits shall include (1) hunting, fishing, and other diversified recreational uses; (2) economic contributions in the best interests of the people of this State; and (3) scientific and educational uses.[5] W.Va. Code § 20-2-1 [1969].

Furthermore, by law, the "ownership of and title to . . . all fish . . . in the State of West Virginia is . . . in the State, as trustee for the people." W.Va. Code § 20-2-3 [1961].[6] It is thus apparent that the water contract in question is imbued and affected with the public's interest.

---

[5] *See also, Natural Streams Preservation Act,* W.Va. Code § 20-5B-1 *et seq.*

[6] Although the complaint does not refer to or rely on the wildlife licensing requirements of West Virginia, we would mention that plaintiff Nester is likely required by W.Va. Code § 20-2-27 to obtain a license to fish during open season; that the Class B resident statewide fishing license fee is six dollars, W.Va. Code § 20-2-40; and that an additional fee of three dollars is required for a resident statewide trout fishing license under W.Va. Code § 20-2-46c, the revenues from which are to be used upon order of the director of natural resources for trout hatchery production. *See also,* W.Va. Code § 20-2-28 exempting bona fide resident landowners from licensing.

Must members of the public whose substantial interests are directly and adversely affected by the acts of governmental officers stand idly by when their public servants violate the law? We think not. In our society, the people are sovereign. "The powers of government reside in all the citizens of the State, and can be rightfully exercised only in accordance with their will and appointment." W. Va. Const. art 2 § 2. "All power is vested in, and consequently derived from, the people. Magistrates [public officers] are their trustees and servants, and at all times amenable to them." W. Va. Const. art 3 § 2. Additionally, that section of our constitution reserves unto the people an "inalienable and indefeasable right to reform, alter or abolish [the government] in such manner as shall be judged most conducive to the public weal,"[7] and the best form of government is declared to be the one "which is capable of producing the greatest degree of happiness and safety, *and is most effectually secured against the danger of maladministration.*" W. Va. Const. art 3 § 3 (emphasis supplied.) The natural citizen in our system of government has the right to expect that his elected officials, agents and appointees shall comply with the law, and we here reiterate that the plaintiffs allege illegal and unlawful conduct.

We are bound to observe that if the people have an "inalienable and indefeasable right to reform, alter or abolish [the government]" in order to correct the excesses of maladministration, they surely, through one or more of their numbers, individually or acting on behalf of the whole should have access to the courts to achieve the same end by judicial means. Moreover, it has been held in other jurisdictions that a declaratory judgment proceeding is an appropriate remedy for resolving controversies regarding the legality of acts of public officials. *See e.g. Riley v. County of Cochise,* 10 Ariz. App.

---

[7] This section is reluctantly but nevertheless commonly held by political scientists and constitutional lawyers as a reservation of the right of revolution under certain circumstances to the sovereign people.

55, 455 P.2d 1005 (1969); 2 W. Anderson, *Actions for Declaratory Judgments* § 677 (2nd ed. 1951).

For the foregoing reasons we hold that when a person's significant interests are directly injured or adversely affected by governmental action, such person has standing under the Declaratory Judgments Act,[8] W.Va. Code § 55-13-1 *et seq.* [1941] to obtain a declaration of rights, status or other legal relations. Sufficient interest will be, in close cases, a question of degree; a formula fitting all cases does not exist. Plaintiffs have alleged a direct injury to substantial property and liberty interests resulting from governmental action. We must, at this stage of the pleadings accept their allegations as true. They thus have standing to litigate their claims.

## VENUE

The trial court dismissed the claim for injunctive relief on the ground that W.Va. Code § 53-5-3 [1923] fixed venue exclusively in Grant County where the act sought to be enjoined—the diversion of water—was allegedly taking place. In granting the motion of the defendant, Dorcas Public Service District, the trial court stated:

> It is the opinion of the court that venue on the action for an injunction is improper because the complaint seeks to enjoin the act of diversion of water which is alleged to have taken place in Grant County, West Virginia. W. Va. Code, chap. 53, art. 5, sec. 3, precludes the granting of such relief by this court. Further, it is the opinion of the court that to permit the plaintiff to maintain an action for injunction in this court would extend the venue of this court in violation of Rule 82 of the West Virginia Rules of Civil Procedure.

The provision relied on by the trial court reads in material part as follows:

> Jurisdiction of a bill for an injunction to any act shall, unless it be otherwise specially provid-

---

[8] *See*, K. Davis, *The Liberalized Law of Standing* 37 Univ. Chic. L. Rev. 450 (1969-70).

ed, be in the circuit court of the county in which the ... act is to be done, or is doing, or is apprehended. ...

This provision relates to the judicial power or jurisdiction of circuit courts to entertain and act on claims for injunctive relief rather than to venue.[9] The trial court committed error in concluding that venue for the injunctive relief was improper because the provision relied on in dismissing the claim does not govern venue. Moreover, this statutory provision has been held to be applicable only where an injunction is the exclusive relief sought and inapplicable where injunctive relief is merely ancillary or incidental to the primary claim and purpose of the lawsuit. *Lewis, Hubbard & Co. v. Pugh,* 115 W.Va. 232, 174 S.E. 880 (1934); *State v. Fredlock,* 52 W. Va. 232, 43 S.E. 153 (1902).

The complaint in the instant case primarily seeks a declaratory judgment that the contract entered into by the defendants is illegal. Incidental to the declaratory judgment, plaintiffs seek injunctive relief prohibiting "the defendants ... from enforcing and carrying out the terms of the contract in question." The thrust of this litigation focuses on the validity of a governmental contract from which all the problems originate and flow; the injunctive relief sought is directed at the parties who are executing the contract. We, therefore, conclude that W.Va. Code § 53-5-3 [1923] has no application to this proceeding and does not preclude the Circuit Court of Kanawha County from granting the injunctive relief sought by plaintiffs.

The trial court also concluded that it had lacked venue to award injunctive relief under the Declaratory Judgments Act and R.C.P. 57, because R.C.P. 82 expressly provides that the West Virginia Rules of Civil Procedure shall not be construed to extend the venue of the court.

Venue is controlled by statute. Since the Declaratory Judgments Act does not fix venue in a declaratory judg-

---

[9] *See* 11B M. J. *Jurisdiction* § 2 (1978) for definitions of jurisdiction and venue and the distinction between them.

ment suit, the general venue statutes relating to civil actions apply. *H. Molsen and Company v. Harp and Lovelace*, 516 S.W.2d 433 (Tex. Civ. App. 1974). When a state officer is properly made a party defendant in a civil action, venue is controlled and determined by the law embodied in W.Va. Code § 14-2-2 [1974].[10] If venue is properly laid against a state officer under this provision, then venue as to other defendants is also proper under traditional venue-giving defendant principles. *Taylor v. Baltimore and Ohio Railroad and State Road Commission*, 138 W. Va. 313, 75 S.E.2d 858 (1953).

Prior to a 1974 amendment to W.Va. Code § 14-2-2, suits against the governor, other state officers, and state agencies could only be prosecuted in the circuit court of the county of the seat of government, namely the Circuit Court of Kanawha County. *Davis v. West Virginia Bridge Commission*, 113 W.Va. 110, 166 S.E. 819 (1933). The amendment, adding a subsection (b), expands venue and permits a state officer to be made a party defendant in certain actions involving real property commenced in a circuit court other than the Circuit Court of Kanawha County. This amendment has already produced an appellate court opinion,[11] subsequent legis-

---

[10] That provision, fixing venue for actions against the state, as worded when the suit was instituted, reads as follows:

(a) The following proceedings shall be brought and prosecuted only in the circuit court of Kanawha County:

1. Any suit in which the governor, or any other state officer, or a state agency is made a party defendant, except as garnishee or suggestee.

2. Any suit attempting to enjoin or otherwise suspend or affect a judgment or decree on behalf of the state obtained in any circuit court.

(b) Any proceeding for injunctive or mandamus relief involving the taking, damage or title to real property may be brought and presented in the circuit court of the country in which the real property affected is situate.

This section shall apply only to such proceedings as are not prohibited by the constitutional immunity of the state from suit under section 35, article VI of the Constitution of the State.

[11] *Phares v. Ritchie*, ___ W.Va. ___, 219 S.E.2d 698 (1975), involved a mandamus action instituted in the Randolph County Cir-

lative adjustment,[12] and a further pronouncement by this Court.[13]

In this action, plaintiff Shobe, as a riparian owner, alleges, among other things, that the acts of the defendants infringe on his property rights in the stream by reducing its normal flow. This, in the judgment of the Court, constitutes an allegation involving the taking or damage to real property within the meaning of W.Va. Code § 14-2-2(b). Venue is therefore proper in either the Kanawha County Circuit Court or in the Grant County Circuit Court. This provision does not provide that actions authorized to be brought in the county where the land is located must be brought there; it gives the parties instituting the action an option to select the court in which to proceed. Since W.Va. Code § 14-2-2 clearly and unambiguously permits venue to be laid in the Kanawha County Circuit Court, the trial court erred in concluding it lacked venue to grant injunctive relief in this proceeding.[14]

For the foregoing reasons, the judgment complained of is reversed and the case is remanded for further proceedings consistent with the law expressed herein.

*Reversed and remanded.*

---

cuit Court by citizens owning real property abutting a road located in that county to compel the Commissioner of Highways to continue its maintenance.

[12] W.Va. Code § 14-2-2 was amended again in 1976 with subsection (b) thereof being amended and reenacted to read:

Any proceeding for injunctive or mandamus relief involving the taking, title, or *collection for or prevention of damage to real property* may be brought and presented in the circuit court of the county in which the real property affected is situate. (emphasis added).

[13] In *State ex rel. Ritchie v. Triplett*, ____ W.Va. ____, 236 S.E.2d 474 [1977], a writ of prohibition was granted based on the holding in *Phares, supra,* n. 1, terminating further proceedings in mandamus in the Circuit Court of Randolph County concerning maintenance of a road located in that county.

[14] In *Lake v. Potomac Light & Power Co.*, 150 W.Va. 641, 647, 149 S.E.2d 230, 233-34 (1966), this Court recognized that a party may obtain both declaratory and injunctive relief in one action. *See, Note,* 73 W.Va. L. Rev. 164 (1970-71).