# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2025 Term

_____

No. 24-ICA-115

_____

FILED

March 19, 2025

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

ANTERO RESOURCES CORPORATION,
Plaintiff Below, Petitioner

v.

ELWANDA J. PIKE, in her capacity as representative of the Estate of RUFUS
FORDYCE PIKE, JOHN KENT PIKE, JR., DANIEL EDWARD PIKE, JAMES P.
MOFFITT, TANYA L. YOHO, TED ARTHUR MCCULLOUGH, ROBERT A.
BORCHERS, RITCHIE PETROLEUM CORPORATION, AMP FUND III, LP, and
DIVERSIFIED PRODUCTION LLC, SUCCESSOR IN INTEREST TO ALLIANCE
PETROLEUM CO. LLC,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Tyler County

Honorable Charles Richard Wilson, Judge

No. CC-48-2019-C-22

Reversed and Remanded

_____

Submitted: January 14, 2025

Filed: March 19, 2025

Amy M. Smith, Esq.
Justin A. Rubenstein, Esq.
Lauren K. Turner, Esq.
Michelle K. Schaller, Esq.
Steptoe & Johnson PLLC
Bridgeport, West Virginia
Counsel for Petitioner

Ted McCullough
Pennsboro, West Virginia
Self-Represented

Brian R. Swiger, Esq.
Jonathan R. Marshall, Esq.
John A. Budig, Esq.
Denali S. Hedrick, Esq.
Bailey & Glasser, LLP
Charleston, West Virginia

William E. Ford, III, Esq.
Ford Law Office
Counsel for Pike
Respondents

Eric L. Calvert, Esq.
South Charleston, West
Virginia
Counsel for Respondent
Diversified Production LLC,
successor in interest to
Alliance Petroleum Co. LLC

Robert A. Borchers
Saratoga Springs, New York
Self-Represented

CHIEF JUDGE CHARLES O. LORENSEN delivered the Opinion of the Court.
JUDGE S. RYAN WHITE concurs, in part, dissents, in part, and reserves the right to file a separate opinion.

LORENSEN, CHIEF JUDGE:

Petitioner, Antero Resources Corporation, appeals the February 27, 2024, order of the Circuit Court of Tyler County granting summary judgment to respondents Rufus Fordyce Pike, John Kent Pike, Jr., and Daniel Edward Pike. At issue is an ownership interest in the surface and oil and gas estates of two parcels of land in Tyler County, West Virginia. Based upon our review of the record and applicable law, we find that Rufus Fordyce Pike, John Kent Pike, Jr., and Daniel Edward Pike (and their predecessor in interest) were not required to receive actual notice of their ouster from the property for the possession by others to be adverse to their interest. Accordingly, we reverse the circuit court's February 27, 2024, order and remand this matter for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This appeal concerns the ownership of an undivided 1/6 interest in the surface and oil and gas estates underlying approximately 97 acres in Tyler County, West Virginia ("Subject Property"). Antero Resources Corporation ("Antero") filed a complaint for declaratory judgment, naming as defendants Rufus Fordyce Pike (now deceased), John Kent Pike, Jr., and Daniel Edward Pike (collectively "Pike Respondents"), and James P. Moffitt, Tanya L. Yoho, Ted Arthur McCullough, Robert Borchers, Ritchie Petroleum Corporation, AMP Fund III, LP, and Diversified Production LLC, successor in interest to Alliance Petroleum Co. LLC (collectively "Non-Pike Respondents"). Antero, as lessee of

a portion of the Subject Property's oil and gas estate and grantee of certain surface rights, requested the circuit court to declare the status, rights, and obligations regarding the ownership of the surface and oil and gas estates of the Subject Property and declare that Antero has been operating its oil and gas leases and related surface use rights concerning the Subject Property in a lawful manner.[1] According to the complaint, Antero alleges the Pike Respondents and their predecessor in interest lost their ownership interests to the Non-Pike Respondents and their predecessors in interest through adverse possession.

The Subject Property consists of two tracts.[2] The first tract contains approximately 89 acres ("First Tract") and the second, adjoining tract contains approximately 7 acres ("Second Tract"). The First Tract was originally owned by Alexander Joseph, who on February 23, 1895, conveyed it to Margaret A. Fordyce. Upon the death of Margaret A. Fordyce, she devised her real estate to her husband, Ingram L. Fordyce, for life, with the remainder to her children, Daisy G. Broadwater and Rufus G. Fordyce. The Second Tract was originally owned by J.S. and Adaline Warner, who on April 18, 1913, conveyed it to Ingram L. Fordyce, reserving unto themselves one-half of the oil and gas royalty. Upon the death of Ingram Fordyce, the Second Tract was passed via

---

[1] Antero leases oil and gas interests on and under the Subject Property. Its operations include five producing horizontal wells and related surface facilities pursuant to surface use agreements for well pads, haul roads, and water and gas pipelines.

[2] Except for the Pike Respondents' ownership interest in the Subject Property, the chain of title and lease agreements hereinafter described are not in dispute.

2

intestate succession to his children, Daisy G. Broadwater and Rufus G. Fordyce, in equal shares. Upon the deaths of Margaret and Ingram Fordyce, their children, Daisy G. Broadwater and Rufus G. Fordyce, owned the surface and mineral estates of the First and Second Tracts, less the one-half oil and gas interest retained by the Warners in the Second Tract.

In 1941, Rufus G. Fordyce conveyed his one-half interest in the Second Tract, through a straw party, to himself, his wife Edna L. Fordyce, and his daughter Margaret Fordyce Pike,[3] as joint tenants with the right of survivorship. In 1942, Rufus G. Fordyce conveyed his one-half interest in the First Tract, through a straw party, to himself, Edna L. Fordyce, his wife, and Margaret Fordyce Pike, his daughter, as joint tenants with the right of survivorship. Therefore, as of 1942, the Subject Property was owned by Rufus G. Fordyce, Edna L. Fordyce, and Margaret Fordyce Pike, each of whom owned a 1/6 interest as joint tenants with right of survivorship, and by Daisy G. Broadwater, who owned the remaining 1/2 interest as a tenant in common.

On August 13, 1949, Rufus G. and Edna L. Fordyce, and Daisy G. Everhart (formerly known as Daisy G. Broadwater), executed a deed purporting to convey the

---

[3] The Pike Respondents are the sons of the late Margaret Fordyce Pike, who died intestate on January 13, 2005, in Hennepin County, Minnesota.

surface and oil and gas rights of the Subject Property to an unrelated individual, Dora Jewell. The 1949 deed conveys "with covenants of general warranty, unto the said Dora Jewell, that two certain tracts or parcels of real estate, lying and being situated…in the District of Meade, County of Tyler and State of West Virginia."  Excepted from the August 13, 1949, conveyance was the 1/2 oil and gas interest in the Second Tract retained by the Warners and all mineral interests other than oil and gas. The August 13, 1949, deed references only the deeds from Alexander Joseph to Margaret A. Fordyce and J.S. and Adaline Warner to Ingram Fordyce. The 1941 and 1942 straw party conveyances by Rufus G. Fordyce (adding Margaret Fordyce Pike as a joint tenant with the right of survivorship) are not referenced in the August 13, 1949, deed. Margaret Fordyce Pike was not a party to the August 13, 1949, conveyance.

The appendix record further reflects[4] that Dora Jewell and Ada Jewell, his wife, signed oil and gas leases for the Subject Property on June 29, 1953, and April 1, 1955, with L.P. Newell and A.H. Horner and a right-of-way agreement on December 28, 1956, with Chesapeake and Potomac Telephone Company of West Virginia. The oil and gas leases and the right-of-way agreement do not mention Margaret Fordyce Pike, and Dora

---

[4] Many facts recited in this opinion were not necessarily established by the circuit court's order insofar as the order found these details were not relevant based on its legal determining that actual notice of ouster was required to oust the Pike Respondents and their predecessor in interest. These facts are presented to illustrate propositions that Antero and the Non-Pike Respondents assert they can establish and that on appeal the Pike Respondents have not actively contested.

Jewell and his successors-in-interest were the only parties who paid ad valorem property tax for the Subject Property.[5]

On November 8, 1958, Dora Jewell and Ada O. Jewell, his wife, conveyed the Subject Property to William C. Summers and Etta V. Summers, excepting from this conveyance a 1/2 interest in all the oil and gas royalty. Robert Borchers, via mesne conveyances, is the current owner of the oil and gas interest reserved by Dora Jewell, for which he receives royalty payments. On May 6, 1972, William C. Summers and Etta Summers signed an electric distribution line easement with Monongahela Power Company. By deed dated April 28, 1973, William C. Summers and Etta Summers conveyed all the surface and their oil and gas interests in the Subject Property to J. Victor Ayres.

From April 28, 1973, to May 19, 1989, J. Victor and Virginia Ayres owned their interests in the Subject Property. During this time, they used the surface of the Subject Property as a family vacation destination. On March 15, 1975, J. Victor Ayres and Virginia Ayres signed a right-of-way agreement with Chesapeake and Potomac Telephone Company of West Virginia. According to Antero, on June 11, 1976, the Ayres also signed an oil and gas lease (the "1976 Oil and Gas Lease") for the Subject Property. The 1976 Oil and Gas

---

[5] According to the parties, neither Margaret Fordyce Pike's name nor the 1941 or 1942 straw party conveyances are referenced or reflected in any subsequent conveyance or lease concerning the Subject Property.

Lease was assigned numerous times. By November 1989, CNG Development Company drilled and completed a well on the Subject Property, which remains in production today. Since late 1989, the CNG well has produced oil and gas from the Subject Property and the operators have paid royalties to the purported owners of the oil and gas interests underlying the Subject Property, which did not include the Pike Respondents (or their predecessor in interest).

Upon J. Victor Ayres' death, all his real and personal property, including his interests in the Subject Property, were devised unto Virginia Ayres who, on May 19, 1989, conveyed by deed "the surface only" of the Subject Property to Ritchie Petroleum Corporation.

Virginia Ayres died on March 26, 1996, and devised her remaining interest in the Subject Property to her daughter, Ann Bushfield. On April 30, 1997, Ann Bushfield, widow, conveyed unto J. Victoria Eckenrod, Mary C. Grinnell, and C. Susan Strahl 3/4 of all of the mineral rights in the Subject Property that she possessed, including oil and gas leases and royalties. Ann Bushfield, J. Victoria Eckenrod, Mary C. Grinnell, and C. Susan Strahl accepted royalties for oil and gas produced from wells that were drilled on the Subject Property. On March 24, 2017, Ann Bushfield, J. Victoria Eckenrod and Mike A. Eckenrod, wife and husband, Mary C. Grinnell and Richard S. Grinnell, wife and husband,

6

and C. Susan Strahl and Fredrick R. Strahl, wife and husband, conveyed their interests in the Subject Property to AMP Fund III, LP.

As of May 19, 1989, Ritchie Petroleum owned all the surface of the Subject Property (exclusive of any interest now claimed by the Pike Respondents), with the entirety of the oil and gas estate having been excepted and reserved. Ritchie Petroleum later made improvements to and subdivided the surface of the Subject Property. Ritchie Petroleum removed an old barn and constructed a large storage barn, which it uses to store equipment. Ritchie Petroleum has also paid all ad valorem property taxes assessed on the surface of the Subject Property.

On March 21, 1990, Ritchie Petroleum conveyed 2.60 acres of the surface of the Subject Property to Daniel M. Shepherd, Jr., and Mylinda L. Shepherd. Thereafter, by deed dated August 5, 2009, the Shepherds conveyed the 2.60 acres to James P. Moffitt and Tanya L. Yoho, as joint tenants with right of survivorship. It is undisputed that Mr. Moffitt and Ms. Yoho and their predecessors paid real property taxes for the 2.6-acre tract, erected structures, and made improvements to the tract, including a trailer for occasional residential use.

On May 14, 1992, Ritchie Petroleum conveyed 11.03 acres of the Subject Property to Regena K. Hendrickson and James W. Hendrickson. Ritchie Petroleum retained ownership of the remaining acreage. The same 11.03 acres was ultimately conveyed to Ted A. McCullough by deed dated August 14, 2015. Ted A. McCullough's predecessors erected a trailer, a chicken coop, and a carport on the Subject Property. Two of Ted A. McCullough's predecessors, Louis A. Mowry and Lenet M. Mowry, also entered into an access road agreement with Antero, dated April 21, 2012. Mr. McCullough and his predecessors paid real property taxes for the tract, and Ted A. McCullough currently rents the property to a full-time resident.

In 2014, Antero acquired its interest in the 1976 Oil and Gas Lease for the Marcellus Shale formation. In 2016 and 2017, Antero drilled and completed five producing horizontal wells underlying the Subject Property. The CNG and Antero wells remain in production.

Meanwhile, Ritchie Petroleum Corporation entered into various agreements with Antero and Antero Midstream LLC for use of certain portions of the surface of the Subject Property retained by Ritchie Petroleum for roadways and gas and water pipelines connected to Antero's Ritchie Petroleum Well Pad. These agreements included numerous surface use and compensation and permanent easement agreements.

The record supports that as early as 2014, the Pike Respondents may have learned that their deceased mother, Margaret Fordyce Pike, once owned a 1/6 interest in the Subject Property.[6] According to the complaint, on August 6, 2019, the Pike Respondents sent a letter to Antero demanding that Antero cease and desist from trespassing across the surface of the Subject Property and pay the Pike Respondents their share of royalties. On September 25, 2019, the Pike Respondents filed a federal lawsuit against Antero for trespass and conversion.[7]

On September 26, 2019, Antero, as a lessee of a portion of the oil and gas estate in the Subject Property, filed a complaint in the Circuit Court of Tyler County, seeking declaratory judgment regarding the parties' rights and obligations with respect to the ownership, use, and enjoyment of the surface and of the oil and gas estates underlying the Subject Property. Antero requested the court to declare that the Non-Pike Respondents became the sole owners of the Subject property through adverse possession, and that Antero is operating lawfully. The Pike Respondents filed a counterclaim accusing Antero of intentional trespass and conversion and demanding that Antero forfeit its oil and gas

---

[6] The record supports that the Pike Respondents (and their predecessor in interest) have never resided in West Virginia and prior to 2014 had not visited, inspected, accessed, used, or in any way acknowledged any ownership interest in any part of the Subject Property or asserted any rights or performed any duties appurtenant to the ownership of the Subject Property.

[7] According to the parties, the federal lawsuit was dismissed on jurisdictional grounds.

infrastructure.[8] The Pike Respondents also claimed a 1/6 interest in the surface and oil and gas estates. The Non-Pike Respondents did not join Antero as plaintiffs in this case and are named party defendants. However, the Non-Pike Respondents filed answers and made statements in circuit court supporting the position taken by Antero. The circuit court stayed discovery on the Pike Respondents' counterclaim pending the outcome of Antero's claim.

Following discovery on Antero's claims, Antero and the Pike Respondents filed cross motions for summary judgment. On November 3, 2022, the circuit court initially denied both parties' motions for summary judgment. Antero and the Pike Respondents filed motions to reconsider the circuit court's November 3, 2022, order, and on February 27, 2024, the circuit court entered an order granting in part and denying in part the motions for reconsideration. The circuit court vacated the November 3, 2022, order, denied Antero's motion for summary judgment, and granted the Pike Respondents' motion for summary judgment on Antero's claims.

The circuit court concluded that Antero did not establish adverse possession by the Non-Pike Respondents (and their predecessors in interest) because Margaret Fordyce Pike, Rufus G. and Edna L. Fordyce, and Daisy G. Everhart (formerly known as

---

[8] The circuit court bifurcated Antero's claims from the Pike Respondents' counterclaim. The only issue on appeal is the circuit court's order granting the Pike Respondents' motion for summary judgment regarding Antero's claims.

Daisy G. Broadwater) were cotenants of the Subject Property, and as a result, Margaret Fordyce Pike and her heirs were required to receive actual notice of an ouster from her cotenants before their right to file an action to recover their real property began. The circuit court, citing *Reed v. Bachman*, 61 W. Va. 452, 57 S.E. 769 (1907) and *Jarrett v. Osborne*, 84 W. Va. 559, 101 S.E. 162 (1919), ruled that an ouster of a cotenant may not occur through constructive notice. The circuit court observed that collecting royalties is a legal right by a cotenant in possession and does not amount to an ouster, and that cotenants "living in a distant place, ha[ve] no notice or knowledge of any adverse claim." *Reed v. Bachman*, 61 W.Va. at ___, 57 S.E. at 772. The circuit court determined that the possessing cotenant must make a "clear, positive, continued disclaimer" and must notify the non-possessing cotenant of ouster, or the non-possessing cotenant must in some way know of the ouster. The circuit court found that neither Margaret Fordyce Pike nor her heirs knew of the activities on the Subject Property and granted the Pike Respondents' motion for summary judgment. The circuit court's order dismissed Antero's claim for declaratory judgment because the circuit court found it entirely derivative of the adverse possession claim. Antero now appeals to this Court.

## II. STANDARD OF REVIEW

The Supreme Court of Appeals of West Virginia ("SCAWV") has long held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to

11

clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992). Syl. Pt. 1, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

We review a circuit court's ruling on a motion for summary judgment de novo. See Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In reviewing motions for summary judgment any permissible inferences must be drawn in the light most favorable to the nonmoving party. *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 59, 459 S.E.2d 329, 336 (1995).

### III. DISCUSSION

Antero lists three assignments of error: 1) that the circuit court erred in holding that the interest claimed by the Pike Respondents was not adversely possessed; 2) that the circuit court erred in holding that Antero must show that the Pike Respondents had actual notice of ouster to prove its adverse possession claim; and 3) that the circuit court erred in holding that the Subject Property had not been adversely possessed for at least ten years. Antero's first and second assignments of error largely address the same issue: whether the Non-Pike Respondents' (and their predecessors in interest) possession of the Subject Property was adverse to the Pike Respondents (and their predecessors in interest).

12

Accordingly, these assignments of error will be consolidated and addressed together. *See Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (consolidating assignments of error). However, before addressing Antero's assignments of error, we turn to the jurisdictional issues implicated in this case.

## A. Appealable Order

The first issue is whether the circuit court's February 27, 2024, order is a final, appealable order. Rule 54(b) of the West Virginia Rules of Civil Procedure[9] outlines when an order is final and ripe for appeal:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Pursuant to Rule 54(b), "an order may be final prior to the ending of the entire litigation on its merits if the order resolves the litigation as to a claim or a party." *Durm v. Heck's, Inc.*, 184 W. Va. 562, 566, 401 S.E.2d 908, 912 (1991) (citations omitted). Here, the circuit court did not certify its order as final pursuant to Rule 54(b). However, the SCAWV has

---

[9] The West Virginia Rules of Civil Procedure were amended, effective January 1, 2025. Only stylistic changes were made to Rule 54(b). Rule 86 of the Rules of Civil Procedure addresses retroactive application of the amendments. It states that the amendments "govern all proceedings in cases thereafter commenced and insofar as just and practicable, all proceedings then pending." Because the 2025 amendments did not substantively alter Rule 54(b), we find it appropriate to cite the Rule's new language.

held that the absence of an express Rule 54(b) certification "will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect." Syl. Pt. 2, in part, *Durm v. Heck's, Inc.*, 184 W. Va. at 563, 401 S.E.2d at 909.

Antero's complaint requested the circuit court to declare the parties' rights regarding the surface and oil and gas estates, the legal owners of the property, and whether Antero has operated its leases lawfully. The order on appeal granted the Pike Respondents' motion for summary judgment on all of Antero's claims. The Pike Respondents' counterclaims for trespass and conversion remain in litigation, but insofar as Antero's claims are concerned, the summary judgment order completely resolves the allegations made in Antero's complaint. Accordingly, we find that the circuit court's February 27, 2024, order approximates a final order in nature and effect.

## B. Standing

Next, we address whether Antero has standing to bring this declaratory judgment action. West Virginia Code § 55-13-2 describes who may bring a declaratory judgment action:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal

14

ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

A justiciable controversy exists for purposes of a declaratory judgment action when a legal right is claimed by one party and denied by another. Syl. Pt 3, *West Virginia Utility Contractors Ass'n v. Laidley Field Athletic and Recreational Center Governing Bd*., 164 W. Va. 127, 260 S.E.2d 847 (1979). "For standing under the Declaratory Judgments Act, it is not essential that a party have a personal legal right or interest." Syl. Pt. 2, *Shobe v. Latimer*, 162 W. Va. 779, 253 S.E.2d 54 (1979). A declaratory judgment action is appropriate when there are "[c]onflicting claims and interests as to precious natural resources…notwithstanding the difficulties and complexities so often involved." *Id.* at 788, 253 S.E.2d at 60.

Antero's complaint requests declaratory judgment regarding the "rights, status and other legal relations vis-à-vis the parties with regard to ownership of the surface of and the oil and gas underlying the [Subject Property]." To that end, Antero requested the circuit court to declare that the Non-Pike Respondents acquired the Pike Respondents' surface and oil and gas interests through adverse possession and to declare that Antero "has at all times operated within its lawful property pursuant to its surface use, easement, and road access agreements, and as lessee of the Subject Property…."

Antero does not possess title to the Subject Property; however, Antero claims it has valid oil and gas operations on the surface and subsurface of the Subject Property and argues that it is operating in a lawful manner by virtue of valid leases, easements, and surface use agreements. Standing in opposition to Antero's claims, the Pike Respondents contend that Antero is trespassing and converting their property, which creates the justiciable controversy. Antero filed this declaratory judgment action which, according to the complaint, asks the circuit court to declare that the Non-Pike Respondents as owners of the Subject Property have legal authority to grant Antero rights to undertake its oil and gas operations on and under the Subject Property in exchange for the consideration set forth in the governing agreements, which do not compensate (or even recognize the interests of) the Pike Respondents.

The Pike Respondents do not deny that Antero has oil and gas leases for the Subject Property or that Antero made considerable investments in the Subject Property. It is also undisputed that the Pike Respondents sent an August 6, 2019, letter to Antero demanding that Antero stop using haul roads on the Subject Property and pay the Pike Respondents 1/6 of the oil and gas royalties.[10] These facts give Antero standing to maintain

---

[10] The Pike Respondents' counterclaim also accuses Antero of trespass and theft and requests an injunction against Antero's business operations and to deem Antero's facilities and equipment forfeited.

a declaratory judgment action to determine who owns and has the rights to lease the Subject Property and whether Antero is operating its business lawfully.

### C. Adverse Possession, Cotenancy, Ouster, and Notice

In its first and second assignments of error, Antero argues that the circuit court erred in finding that the Non-Pike Respondents' possession of the Subject Property was not adverse to the Pike Respondents' interest. Antero argues that the circuit court erred in holding that Antero must show that the Pike Respondents had actual notice of an ouster before the Non-Pike Respondents' (and their predecessors) possession of the Subject Property became adverse to the Pike Respondents' interest, triggering the statute of limitations for the Pike Respondents' right to file an action to recover their real property. Specifically, Antero argues that Margaret Fordyce Pike was ousted from the Subject Property when Dora Jewell, under color of title, took possession of the Subject Property in an open and notorious manner. Antero's position is that Dora Jewell and his successors were not required to give Margaret Fordyce Pike actual notice of an ouster. The Pike Respondents reject this claim and argue that an ouster never occurred because neither Margaret Fordyce Pike nor her heirs were placed on actual notice of an ouster.

Normally, to establish adverse possession, one must demonstrate "(1) That he has held the tract adversely or hostilely; (2) That the possession has been actual; (3)

17

That it has been open and notorious (sometimes stated in the cases as visible and notorious); (4) That possession has been exclusive; (5) That possession has been continuous; [and ] (6) That possession has been under claim of title or color of title.[11]" Syl. Pt. 3, *Somon v. Murphy Fabrication & Erection Co.*, 160 W. Va. 84, 232 S.E.2d 524 (1977). "[T]he period for holding property under the doctrine [of adverse possession] is co-equal to the statute of limitations barring suits for recovery of real property which at the present time is ten years." *Id*. at 89, 232 S.E.2d at 528 (citing W. Va. Code § 55-2-1 (1923)[12]). The party claiming adverse possession must prove each of the six elements by clear and convincing evidence. Syl. Pt. 2, *Brown v. Gobble*, 196 W. Va. 559, 474 S.E.2d 489 (1996).

The adverse possession analysis is enlarged where one cotenant claims adverse possession from another cotenant because:

> mere holding of possession by one cotenant can never be considered adverse to a cotenant until there is some act or conduct on the possessing cotenant's part which must give the other cotenant notice that the other cotenant's title has been repudiated or is disputed by the one in possession, or there must

---

[11] "A deed, void for defects apparent upon its face, constitutes 'color of title,' open, notorious, exclusive, and hostile possession under which for a period of 10 years gives title under the statute of limitations." Syl. Pt. 1, *Russell v. Tennant*, 63 W. Va. 623, 60 S.E. 609 (1908).

[12] "No person shall make an entry on, or bring an action to recover, any land, but within ten years next after the time at which the right to make such entry or to bring such action shall have first accrued to himself or to some person through whom he claims." W. Va. Code § 55-2-1 (1923).

18

> be such conduct by the cotenant in possession as reasonably would put the other cotenant on inquiry.

3 Am. Jur. 2d Adverse Possession § 196 (2025). "Mere silent possession, however long, by one taking rents and profits, without notice or knowledge of such adverse claim on the part of the other, will not render such possession adverse." Syl. Pt. 10, *Jarrett v. Osborne*, 84 W. Va. 559, 101 S.E. 162 (1919).

In cases of one cotenant claiming adverse possession from another cotenant, possession does not become adverse or hostile until the cotenant in possession establishes that the cotenant out of possession was ousted from the property. "An ouster is an express denial of the title and right to possession of the fellow tenant, brought home to the latter openly and unequivocally. Ouster has also been defined as the wrongful dispossession or exclusion, not necessarily by force, by one tenant in common of his or cotenants from the common property of which they are entitled to possession." 20 Am. Jur. 2d Cotenancy and Joint Ownership § 49 (2025). "The statute of limitations does not begin to run in favor of one co-tenant of land in possession, against another co-tenant thereof, until actual ouster by the former, or some other act or acts on his part amounting to a total denial of the right of the latter, and until notice or knowledge of the act or acts relied on as an ouster is brought home to him." Syl. Pt. 2, *Clark v. Beard*, 59 W. Va. 669, 53 S.E. 597 (1906). "The notice or knowledge required must be either actual, or the act or acts relied on as an ouster must be of such an open and notorious character as to be notice of themselves, or reasonably

19

sufficient to put the disseised co-tenant on inquiry which, if diligently pursued, will lead to notice or knowledge in fact." *Id.* at Syl. Pt. 3.

This appeal involves adverse possession of a cotenant's interest in real property, but this case is distinguished from the cases relied upon by the circuit court because the party claiming adverse possession of a cotenant's interest was not a party to the original cotenancy. In this case, three of four cotenants, without notice to the fourth cotenant, conveyed through color of title all the cotenancy's surface and oil and gas interests to a stranger of the cotenancy, the successors of whom now claim adverse possession of the fourth cotenant's interest. An ouster of the cotenant must still be established in this case, but when and how an ouster may be established is at issue. According to SCAWV precedent, the non-conveying cotenant may be ousted when the stranger to the cotenancy receives color of title, and the stranger takes actual, exclusive possession of the land and possesses it openly and notoriously in such a manner as to constitute constructive notice and knowledge of the ouster for the ten-year statutory period set forth in West Virginia Code § 55-2-1.

"If one cotenant makes an executory contract for sale to a stranger of the entire tract, not merely his interest, and the purchaser enters into actual possession, this is an ouster of the other cotenant, and such possession for the period of the statute of limitations will bar his rights, without other notice of adverse claim." Syl. Pt. 1, *Lloyd v.*

20

*Mills*, 68 W. Va. 241, 69 S.E. 1094 (1910). In *Lloyd v. Mills*, two of three cotenants quitclaimed a parcel to purchasers who were strangers to the cotenancy. Importantly (and similar to this case), "[t]he said contract and the said deed did not sell and convey merely the undivided interests or shares of the Lloyd grantors, but the whole land in its entirety, thus ignoring the right of Stacy Lloyd, Jr., one of the said [cotenants]." *Lloyd v. Mills*, 68 W. Va. at ___, 69 S.E. at 1095.

SCAWV made a similar holding in *Pickens v. Stout*, 67 W. Va. 422, 68 S.E. 354 (1910). "An ouster between joint tenants, tenants in common, or coparceners may be effected by open, notorious, and exclusive possession of the land by a stranger, under a deed or an executory contract of sale, executed by one of the co-tenants to such stranger, purporting to convey or sell the whole thereof to the latter." *Id.* at Syl. Pt 5. However, "[m]ere execution and delivery of such deed or contract is not of itself sufficient to work an ouster. To it there must be added express actual notice of the adverse claim and possession, *or* open, notorious, exclusive, and hostile possession of the land by the grantee or vendee of which the true owner in co-tenancy must take notice, and inquire by what right such dominion is exercised." *Id.* at Syl. Pt 6 (emphasis added).[13] Whether this high

---

[13] We note that a more recent case in Virginia illustrates the same principles established in *Lloyd* and *Pickens*. In *Harkleroad v. Linkous*, 704 S.E.2d 381 (Va. 2011), the Virginia Supreme Court observed that:

> [T]here is a presumption against any occupancy of a co-tenant being hostile possession as to other co-tenants with whom he is in privity…However, this presumption does not apply when,

constructive notice standard for a cotenant's ouster is met by clear and convincing evidence

is a fact question determined by fact finder below.

As of 1942, Rufus G. Fordyce, Edna L. Fordyce, and Margaret Fordyce Pike

were each 1/6 cotenants in the Subject Property with Daisy G. Everhart who owned the

remaining 1/2. In 1949, Rufus G. Fordyce, Edna L. Fordyce, and Daisy G. Everhart

conveyed through color of title all the cotenancy's interests in the surface and oil and gas

estates to Dora Jewell, who was a stranger to the cotenancy. The deed to Dora Jewell does

not purport to convey only the fractional interests of Rufus G. Fordyce, Edna L. Fordyce,

and Daisy G. Everhart. The deed references and purports to convey the surface and oil and

_____

> as here, a stranger to the original co-tenancy takes possession
> of the property through a conveyance that on its face purports
> to give the new co-tenant the right to possess the whole
> property and he claims ownership of the whole…This is so
> because the stranger to the original co-tenancy is not in privity
> with the other co-tenants and when he "enters into the
> exclusive possession of the land, claiming title to the whole, it
> is an ouster of the other co-tenants and the grantee so entering
> and claiming title may rely upon his adversary possession if
> continued [for] the statutory period"…Contrary to Appellants'
> contention, under the circumstances of this case it was not
> necessary for the…parties claiming adverse possession, to
> discover the fact of Appellants' co-tenancy and then give actual
> notice to Appellants of the [adverse possessor's] intent to
> possess the property exclusively. Rather, the "intention to
> claim the land to the exclusion of the co-tenant may be shown
> by the acts of the claimant."

*Harkleroad v. Linkous*, 704 S.E.2d. at 384 (citations omitted). While *Harkleroad* is not
direct precedent for this Court, it is instructive as a contemporary application of adverse
possession by a stranger to a cotenancy.

gas interests that were originally conveyed by Alexander Joseph to Margaret A. Fordyce in 1895 and by J.S. and Adaline Warner to Ingram L. Fordyce in 1913. The 1949 deed to Dora Jewell does not mention Margaret Fordyce Pike or describe the 1941 and 1942 straw party conveyances with Margaret Fordyce Pike. Moreover, there is no evidence that Dora Jewell knew of Margaret Fordyce Pike's interests. Pursuant to *Lloyd* and *Pickens* a fact finder may conclude that Margaret Fordyce Pike was ousted if it finds that a stranger to the cotenancy, under color of title, took exclusive possession of the Subject Property exercising rights as a fee owner, and engaged in acts equivalent to denial of Margaret Fordyce Pike's rights in the Subject Property.

Contrary to the Pike Respondents' arguments, the holdings in *Lloyd* and *Pickens* do not require actual notice of a cotenant's ouster, only that Dora Jewell and his successors in interest, under color of title, occupied the Subject Property in an open, notorious, exclusive, and hostile manner. Actual notice was not required as a matter of law to Margaret Fordyce Pike. Moreover, *Reed* and *Jarrett* are distinguishable from the facts of this case because the parties claiming adverse possession in *Reed* and *Jarrett* were cotenants with privity to the cotenant sought to be ousted. The parties asserting adverse possession in *Reed* and *Jarrett* were *not* strangers to the original cotenancy that claimed undivided ownership of the original cotenancy's surface and oil and gas estates through color of title.

In West Virginia, "[e]very owner is deemed to be cognizant of what is done upon his land and of who is in possession of it. The law exacts this measure of diligence from him. He must know whether strangers are entering upon it, and, knowing that, must inquire by what right they do so…It is sufficient that the acts of adverse possession were such in their characters and attendant circumstances that a man reasonably attentive to his own interest would have known that an adverse right was being asserted." *Pickens v. Stout*, 67 W. Va. at ___, 68 S.E. at 359-360 (citations omitted). Margaret Fordyce Pike and her heirs were completely absent from the Subject Property for at least sixty-five years. During this period, the Subject Property was sold to Dora Jewell and subsequently transferred to third parties numerous times. The Subject Property was subdivided, oil and gas leases were consummated, wells were drilled, permanent easements and rights-of-way were granted, and storage and residential structures were installed. Had the Pike Respondents and the Non-Pike Respondents been cotenants with privity and not strangers, the heightened notice requirements adopted in *Reed* and *Osborne* would apply. However, this case more appropriately falls within the fact patterns of *Lloyd* and *Pickens*, where an ouster can be found to occur when a stranger with color of title takes actual, exclusive possession of the property and possesses the property in a hostile, open, and notorious manner. Actual notice of an ouster to the non-conveying cotenant is not required under binding SCAWV precedent.

The circuit court committed an error of law when it held that an ouster could occur only if the Pike Respondents had actual notice or knowledge of Dora Jewell's (and his successors in interest) possession of the Subject Property. We refrain from holding that Antero has demonstrated adverse possession by the Non-Pike Respondents and their predecessors in interest as a matter of law. The doctrine of adverse possession requires the possessor to prove the elements of adverse possession to the fact finder by clear and convincing evidence. Syl. Pt. 2, *Brown v. Gobble*, 196 W. Va. 559, 474 S.E.2d 489 (1996). Our holding is narrow. We hold that under the facts of this case and on summary judgment, actual notice of an ouster to a cotenant is not required as a matter of law and that constructive notice of ouster may be established by the Non-Pike Respondents and their predecessors in interest engaging in acts equivalent to a denial of Mary Fordyce Pike's (and her successors in interest) rights in the Subject Property. Upon remand, Antero must still establish that an ouster in fact occurred and prove that all elements of adverse possession by the requisite standard of proof to prevail on its claim.[14]

---

[14] The circuit court's finding with respect to whether the Non-Pike Respondents adversely possessed the Subject Property is only one aspect of Antero's declaratory judgment action. The complaint also requests the circuit court to declare whether Antero is operating its leases lawfully.

## D. Tacking

Finally, Antero argues that the circuit court erred in holding that Antero did not show adverse possession of the Subject Property for at least ten years. According to Antero, the time of the adverse possession of the Non-Pike Respondents' predecessors-in-interests should be included in the ten-year calculation. Antero correctly observes that in adverse possession claims, SCAWV precedent recognizes tacking of successive interests to meet the ten-year period. The SCAWV has "held that 'tacking' permits adding together the time period that successive adverse possessors claim property, and that should this period of time added together be more than ten years, adverse possession may be allowed." *Brown v. Gobble*, 196 W. Va. 559, 567, 474 S.E.2d 489, 497 (1996).

The circuit court's order states that "Co-Defendants Ted McCullough; AMP Fund III, LP; and Robert A. Borchers cannot make prima facie claims for adverse possession because they have not continuously occupied the Subject Property for at least ten years, the statutory period in West Virginia." However, the circuit court's order does not address whether tacking should be applied in this case. We find the circuit court's order lacks sufficient analysis regarding tacking and is insufficient for appellate review on the issue of whether the Non-Pike Respondents held interests in the Subject Property for more than ten years. Upon remand, the circuit court should consider whether tacking applies to any interest held by the Non-Pike Respondents.

## IV. CONCLUSION

For the foregoing reasons, we reverse the circuit court's February 27, 2024, order and remand this matter to the Circuit Court of Tyler County for further proceedings consistent with this opinion.

Reversed and Remanded.